I represent the appellant, Toi Melvin, in an appeal from a 262-month sentence. I would like to reserve two minutes of rebuttal time. The crime that resulted in this draconian sentence, a sentence of almost 22 years, was the free sales of crack cocaine to a police informant over a two-month period. The parties disagree on almost everything in this case except some of the underlying guideline calculations. There's no question that under the pre-Fair Sentencing Act career offender guideline, the sentencing range was 262 to 327 months. Also, I don't think there's any disagreement that after the passage of the Fair Sentencing Act the career offender range for Mr. Melvin would be 188 to 235 months and also that the non-career offender range would be 84 to 105 months. Mr. Melvin contends that he was entitled to be sentenced under the changes brought by the Fair Sentencing Act and under the Supreme Court case in Dorsey v. the United States, which resolved the issue of whether individuals like him qualify for sentencing under the new law. Two issues are presented to the court. One is whether the error below in failing to apply the Fair Sentencing Act qualifies as plain error and also there's the question of whether the appeal waiver applies to Mr. Melvin. I'll address I think the easier question is the plain error issue. Clearly, plain error is determined based upon the status of the law at the time of the appeal. Dorsey v. United States is the first state in the United States to pass the Fair Sentencing Act and clearly the district court plainly erred in not applying the statutory changes. Did the error affect Mr. Melvin's substantial rights? Well, clearly it did because there's absolutely no overlap between the grounds for an upward departure or an upward variance and therefore absent such grounds, the court would be required to sentence within the advisory range, which is 188 to 235 months. And if assuming that the court would have sentenced Mr. Melvin to the bottom of the got and what he would probably get. As far as whether the error affects the integrity and public reputation of the proceedings, I think we just need to look at the Attorney General's public statements regarding the FSA. He's said that the FSA has corrected a discredited policy that sentences. We would submit that even the Attorney General would agree that the public reputation of the proceedings would be impaired if somebody is subjected to a clearly excessive sentencing range. So that takes us to, so I would submit that all four prongs of the plain error standard are met here and the only issue that for this court that is germane would be whether the appeal waiver applies. Now, in the brief at pages seven, in our reply brief at pages seven through eight, we quote from the U.S. Attorney's manual, which advises the U.S. Attorney's offices that in cases involving quote, egregiously incorrect sentences, unquote, the government attorney should disregard the appeal waiver and the plea agreement and argue the merits of the appeal. And we would submit that egregiously incorrect sentence applies to Mr. Melvin's sentence in this case. The district, the government relies on an agreement or a language in the plea agreement that Mr. Melvin waived his right to appeal any sentence except a sentence above the advisory guideline range as calculated by the district court, whether it's correct or incorrect. And therefore, because Mr. Melvin's sentence was within the range calculated by the court under old law, he's lost his right to appeal. Well, the district court during the change of plea colloquy advised Mr. Melvin that he retained or the appeal waiver did not apply with respect to claims of what change in the law was the FSA. Well, the FSA was in effect when he was sentenced. That's true. But I am discussing the change of plea hearing, which was in 2009. Yeah, I understand. But it is it's never been quite clear to me why he wasn't when he was actually sentenced. Why wasn't the FSA applied? Well, because he was sentenced in May of 2011. And I think in August of 2010, this court. He was sentenced post-Karadine, but pre-Dorsey. Exactly, yeah. Karadine, this court said, no, offenders like Mr. Melvin are not entitled to benefits of the FSA, but under Dorsey decided after the sentence. And so that is the reason. I got you. So it's our position that the court's advice to Mr. Melvin that he retained the right to appeal in the event that there was a change in the law applies here because there was a change in the law and that became part of the plea. Now, the assistant U.S. attorney who handled the case, who had written up the plea agreement, was present during the change of plea hearing, and he did not object. He didn't say, Judge, what you've just told this defendant, that he could appeal a change in the law is not what's in the plea agreement and therefore we object, advise him that he doesn't have that right. He stayed silent. The government has now taken the position in this appeal, apparently, that Mr. Melvin should have figured out on his own that the district judge deviated from the language of the plea agreement. He should have just disregarded it, even though the AUSA who was present during the change of plea hearing disregarded it. So we think that it's pretty clear here under a line of case authority, several published decisions from other circuits, and an unpublished decision of this court, Sarlog v. United States, that the appeal waiver cannot be enforced against Mr. Melvin. And finally, there's also the miscarriage of justice exception to appeal waivers, that even if an appeal waiver is deemed valid and otherwise binding, that the court can disregard it if enforcing it would result in a miscarriage of justice. And we've cited a Seventh Circuit case which dealed with a very similar situation where the defendant was sentenced based upon governing circuit precedent at that time, and he was considered a career offender. And then a couple years later, the U.S. Supreme Court case, the U.S. Supreme Court decided a case which essentially rendered null and void the prior circuit precedent. And Mr. Narvaez, that's the Seventh Circuit case, was permitted to obtain relief from an excessive sentence. If he was resentenced, is it possible that he could still get the same sentence? I don't think so, unless something very drastic changed between then and now, because there's a three-step process to sentencing. Determine the advisory guideline range, determine whether there's any basis for departure, up or down, or any basis for a variance, up or down. And at the previous proceedings, the court did not find any grounds for an upward departure or variance, so unless... So even if it's mathematically possible, you're saying if the same criteria were applied, the sentence would be lower? Correct. Unless Mr. Melvin has done something in prison that I'm not aware of, there's no basis for an upward departure, and therefore a new sentence would have to be within the 188 to 235-month revised range, which is less than what the 262 months that he got. Thank you. May it please the court, Deborah Brenneman for the United States. I'd like to start by pointing out one thing that Mr. Belli and I both agree on, that the dispositive issue in this case is whether or not defendant knowingly and voluntarily waived his right to appeal with the exceptions listed in the plea agreement. There is well-established authority, and lots of it, from this court and the Supreme Court that the defendant can waive any right, statutory, constitutional, so long as he does so knowingly and voluntarily. This court, of course, is applying a de novo standard of review to make that determination, and that will become the dispositive issue in this case we would submit. If an issue violates an appeal waiver or is raised in contravention of an appeal waiver that was knowingly and voluntarily entered, this court does not consider it. That's what this court said in Bazzi, among other cases. So this court need not reach whether the FSA should have applied, and if so, how, if it finds that the appeal waiver was knowing and voluntary. The best evidence we have that it was, in fact, knowing and voluntary is that it was, first of all, the language in the plea agreement is unambiguous. It's straightforward. Defendant is educated. He actually graduated fifth in his high school class, has no history or record of any kind of mental illness or inability to understand. It's really not about what's in the plea agreement. It's about the district court's plea agreement during the plea colloquy, right? Arguably. At the very beginning of the plea colloquy, the court referenced the plea agreement, and defendant said that it had been explained to him by counsel and he understood the written plea agreement. Later on, when the court referenced the waiver provision, the court did say, did you not use the same language as the plea agreement? The court referenced two separate sub-paragraphs, paragraph 13 in the plea agreement. Paragraph 13A referenced the waiver of direct appeal rights, and 13B referenced the waiver of some rights to collateral review under 2255. And the court really did two things that were potentially misleading. One, it sort of combined those two sections, and then he added the change in the law language. Yes. Those are the ways in which the district court's recitation do not exactly parallel the plea agreement. But at the very beginning of that, the district court said, do you understand that under the terms of your plea agreement, in paragraph 13, reference that precise language that defendant already knew. So the defendant is supposed to figure out the discrepancy even when no attorney comments on it? I would submit that here, there's that the discrepancy, so to speak, is in the summary of the court oversimplified the summary. The court never referenced the exception to the appeal waiver. The exceptions the court referenced only related to collateral review. It's as if the court said it's not really that it's not it's not entirely clear that the addition of the change in the law language under the district court's rendition of it applies only to collateral review, though, is it? Not necessarily, because the court put appeal and 2255 together, described the waiver together, together in a way that was. District court covered a lot of ground in a single question. Ended with that, do you understand that? Which, whether that is unpublished cases, we found that to be plain error that affected substantial rights, right? Which part? Like the plain error. It's that sort of variation. I mean, if you, I don't want to, I mean, I hate to call it a misrepresentation, because that suggests something other than just inadvertence. But I mean, it was not an accurate representation of what was. It was a misstatement. It did not directly correspond. It didn't directly correspond to the language in the plea agreement. As this court found in Sarlog, of course, if the statements by a district court misstate the waiver provision and do so in circumstances that caused the defendant to misunderstand. I think that second part is significant here, because we don't have any indication that defendant necessarily misunderstood this. In Sarlog, of course, the court specifically said, you retain the right to appeal three things. Here, the court didn't say you retain the right to appeal specific things, didn't go through a long discussion with defendant. Instead, referenced the language of the plea agreement and provided a one-sentence oversimplification with an additional element of the language in that plea agreement. But one sentence can be relatively significant. One sentence could be relatively significant. And if this court finds that defendant did not knowingly and voluntarily waive his right to appeal under the language in the plea agreement, then we agree that a remand for further reconsideration by the district court is appropriate. For the same reasons... Say that again to me. If this court finds that defendant did not knowingly and voluntarily waive his right to appeal under the conditions in the plea agreement, then a remand for further consideration by the district court would be appropriate for the reasons this court found in Boyd. Now, the recent Boyd case, of course, is different because Boyd had no plea agreement. There was no appeal waiver. And the court had specifically considered whether or not the FSA should reduce the sentence, had imposed a below guideline sentence. And this court found that knowing of Dorsey, the district court might have granted a lower sentence. So we would agree that if this court finds that the appeal waiver is unenforceable, then a remand is the appropriate remedy here. In that sense, Mr. Belli and I agree that the appeal waiver is the dispositive issue here. That's the only thing this court needs to consider and needs to resolve here. Unless the panel has further questions, I'll rest on my brief. Thank you. Unless the court has any other questions for me, I have no further arguments. Anything further? Thank you, Mr. Belli, for accepting the representation of Mr. Melvin under the Criminal Justice Act. We appreciate your having accepted the appointment and appreciate your advocacy on his behalf. Thank you.